## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) |
| v. | )   **CR. No. 15-00171 (ABJ)** |
| | ) |
| **NED MCCALLISTER** | ) |
| | ) |

### DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE INDICTMENT

Mr. McCallister, through undersigned counsel, moves this Honorable Court, pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B)(v) and (b)(1) to dismiss Count Two of the indictment.  This Count charges Mr. McCallister with carrying and using a firearm in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c).  Specifically, the charge alleges that the underlying "crime of violence" for the § 924(c) count is Hobbs Act robbery in violation of 18 U.S.C. § 1951(b).[1]

As will be explained herein, the Hobbs Act robbery offense underlying the § 924(c) offense (Count Two) categorically fails to qualify as a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3)(A) (the force clause) for three independent reasons:   First, the offense can be accomplished by placing one in fear of injury to *intangible property*.  Second, the offense can be accomplished by placing one in fear of *injury* to his person without the use, attempted use, or threatened use of *violent physical force*.  Third, the offense can be accomplished without the *intentional* threat of the same.  Additionally, the residual clause of § 924(c)(3)(B) is unconstitutionally vague under *Johnson v. United States,* __ U.S.__, 135 S. Ct. 2551 (2015).  Therefore, Count Two does not state an offense and must be dismissed.

---

[1]   Count One in fact alleges *Attempted* Hobbs Act Robbery, as opposed to the completed crime. For ease of reference, this Motion refers to the offense simply as Hobbs Act Robbery.

## STATUTES INVOLVED

This motion primarily concerns the following two federal statutes:

1.   **18 U.S.C. § 1951(b)**

Section 1951, in pertinent part, provides:

(1)     The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining shall [be punished in accordance with the remainder of the statute].

2.   **18 U.S.C. § 924(c)**

Section 924(c)(1)(A), in pertinent part, provides:

. . . any person, who, during and in relation to a crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, shall, or who in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .

(i)     be sentenced to a term of imprisonment of not less than 5 years;

(ii)    if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years: and

(iii)   if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Under § 924(c)(3), "crime of violence" is defined as follows:

(3)     For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

(A)    has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

**SUMMARY OF ARGUMENT**

The Court must dismiss Count Two, the alleged § 924(c) violation, because the predicate Hobbs Act robbery offense as defined by § 1951(b) does not qualify as a "crime of violence" as a matter of law.

As noted in the prior section, the relevant portion of § 924(c) defining a "crime of violence" has two clauses. The first clause – § 924(c)(3)(A) – is commonly referred to as the force clause. The other – § 924(c)(3)(B) – is commonly referred to as the residual clause. As discussed in the next sections, Hobbs Act robbery categorically fails to qualify as a "crime of violence" under the force clause, and the residual clause is void for vagueness under *Johnson*. Therefore, a conviction cannot be constitutionally sustained under § 924(c) for Count Two.

To begin with, in *Johnson v. United States*, the Supreme Court struck down the Armed Career Criminal Act's (ACCA) residual clause (18 U.S.C. § 924(e)(2)(B)(ii)) as unconstitutionally vague. 135 S. Ct. 2551, 2557 (2015). Under *Johnson*, § 924(c)'s materially indistinguishable residual clause (§ 924(c)(3)(B)) must similarly be stricken as unconstitutional. Indeed, the Ninth Circuit in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015) and the Seventh Circuit in *United States v. Vivas-Ceja*, __F.3d__, 2015 WL 9301371 (7th Cir. 2015) recently struck down an identical residual clause – 18 U.S.C. § 16(b) – as unconstitutionally vague in light of *Johnson*. The rationale of *Dimaya* and *Viva-Ceja* applies equally to the determination of whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c). Relying on the same reasoning of *Dimaya* and *Viva-Ceja*, Judge Grimm of the District of Maryland recently found that the § 924(c) residual clause was void for vagueness. *See United States v. Edmundson*, 2015 WL 9582736 (D. Md. Dec. 30, 2015). This Court should do the same.

The only other question here is whether a Hobbs Act robbery offense qualifies as a "crime of violence" under § 924(c)'s narrow force clause (§ 924(c)(3)(A)).   It does not for three independent reasons.

First, Hobbs Act robbery categorically fails to qualify as a "crime of violence" because it can be accomplished by putting another in fear of injury to *intangible* property, which does not require the threat of physical force to property necessary under the § 924(c)(3)(B) force clause.   The Government's concession with respect to Maryland robbery is instructive here.   The Government recently conceded that Maryland common law robbery does not qualify as a "violent felony"/"crime of violence" under the ACCA/career offender force clause, which is almost identical to the force clause in § 924(c)(3)(A).   *See* Brief of Appellee, *United States v. Louis Martin*, No. 14-4779, ECF No. 58 at 73 (4th Cir. Sept. 14, 2015); Supplemental Brief of Appellee, *United States v. Coulter*, Case No. 14-4271, ECF No. 86 at 9 (4th Cir. Sept. 28, 2015).   The Government has reasoned that Maryland robbery (like Hobbs Act robbery) can be accomplished by threatening injury to one's property.   If Maryland robbery does not qualify as a "crime of violence" under the force clause for this reason, neither does not Hobbs Act robbery, which can be accomplished the same way.

Second, Hobbs Act robbery can be violated by placing another person in fear of physical injury, which the Fourth Circuit in *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012) squarely held does not require the threat of violent physical force necessary to qualify as a "crime of violence" under § 924(c)(3)'s force clause.   *Cf. In re Sealed Case*, 548 F.3d 1085, 1089 (D.C. Cir. 2008) (holding that "by defining 'force or violence' to include the minimal level of force necessary to obtain property 'by sudden or stealthy seizure or snatching,' the [D.C. Code robbery] statute covers offenses that fail to qualify as crimes of violence").

Third, Hobbs Act robbery is not a "crime of violence" under the force clause because it does not require the *intentional* use, threatened use, or attempted use of violent physical force.   This is true

because the offense can be accomplished without any intent to put another in fear of injury to his

person or property.

For all these reasons, Hobbs Act robbery categorically fails to qualify as a "crime of violence"

under § 924(c)(3)(A).

**I.     Hobbs Act robbery fails to qualify as a "crime of violence" under the § 924(c) force clause.**

**A.     The Supreme Court's 2010 *Johnson* decision defines "physical force" under § 924(c)'s force clause to mean violent physical force.**

The term "physical force" in § 924(c)(3)(A) has the meaning given to it by the Supreme Court's

2010 decision in *Samuel Johnson v. United States*, 559 U.S. 133, 140 (2010).[2]   In *Samuel Johnson*, the

Supreme Court held that the phrase "physical force" means "violent force," i.e., "strong physical

force" that is "capable of causing physical pain or injury to another person."   *Id.*   As further discussed

below, Hobbs Act robbery falls far short of satisfying this definition.

**B.     The categorical approach applies in determining whether Hobbs Act robbery is a "crime of violence" under the "force" clause.**

In determining whether an offense qualifies as a "crime of violence" under the "force" clause,

sentencing courts must employ the categorical approach.   *See Descamps v. United States*, 133 S. Ct. 2276,

2283 (2013); *United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2013).[3]   This approach requires that

---

[2]      Courts of Appeals have consistently held that 18 U.S.C. § 16(a) (which is almost the same as § 924(c)(3)(A)) contemplates "destructive," "violent force" – not *de minimis* force.   *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001); *see also Flores-Lopez v. Holder*, 685 F.3d 857, 864 (9th Cir. 201) (requiring "use of violent, physical force"); *United States v. Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009); *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003); *Bazan-Reyes v. INS*, 256 F.3d 600, 611 (7th Cir. 2001) ("[T]erm 'physical force' in 18 U.S.C. § 16(b) refers to actual violent force."). Indeed, the Supreme Court in *Johnson* cited lower court opinions defining "physical force" under § 16 when defining "physical force" in the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). 559 U.S. at 140 (citing *Flores*, 350 F.3d at 672).

[3]      Although *Descamps* involved the categorical approach as applied to the ACCA, this same categorical approach applies in determining whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c).   *See United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015).

courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence" *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Royal*, 731 F.3d at 341-42.   In addition, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all the criminal conduct covered by a statute – "including the most innocent conduct" – matches or is narrower than the "crime of violence" definition.   *Torres-Miguel*, 701 F.3d at 167.   If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

For the limited purpose of "help[ing to] implement the categorical approach," in a "narrow range of cases," a federal sentencing court may look beyond the legal definition of the offense to a small list of judicial documents to determine whether the defendant pleaded guilty to a "crime of violence." *Id.* at 2283, 2285.[4]   This approach, known, as the modified categorical approach, is also driven by the elements.

In *Descamps*, the Supreme Court clarified that federal sentencing courts "may apply the modified categorical approach only if the state crime at issue is divisible." *Omargharib*, 775 F.3d at 198 (citing *Descamps,* 133 S. Ct. at 2283).   An offense is divisible if it has alternative elements – some which constitute a "crime of violence" and some which do not.   *Omargharib*, 775 F.3d at 197-98 (citing *Descamps*, 133 S. Ct. at 2283-84).   If a statute is divisible, a federal sentencing court may look at the limited number of authorized documents only "to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps*, 133 S. Ct at 2284.

---

[4]      These documents include the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, a judge's factual findings in a bench trial, and jury instructions.   *Shepard v. United States*, 544 U.S. at 13, 20, 26 (2005).

To be clear, merely because a statute has multiple disjunctive phrases or terms separated by the word "'or' in the definition of a crime does not automatically render the crime divisible." *Omargharib*, 775 F.3d at 198 (citing *Royal*, 731 F.3d at 341-42); *see also Rendon v. Holder*, 764 F.3d 1077, 1086-87 (9th Cir. 2014) (reasoning that when a state criminal law "is written in the disjunctive . . . , that fact alone cannot end the divisibility inquiry"). Rather, "a crime is divisible under *Descamps* only if it is defined to include multiple alternative elements (thus creating multiple versions of a crime), as opposed to multiple alternative means (of committing the same crime). Elements as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt." *Omargharib*, 775 F.3d at 198-99 (internal quotation marks and citations omitted). If the jurors, however, are not required to come to agreement on one statutory phrase or term to the exclusion of another in a statute, then those phrases are alternative means – not elements. *Id.* Only when the jury is required to unanimously select one phrase versus another in a disjunctively worded statute are the phrases alternative elements. *Id.* And only when a statute is divisible with alternative elements – not alternative means – does the modified categorical approach apply. *Id.*

The Fourth Circuit's decisions in *Royal* and *Omargharib* illustrate this point well. In *Royal*, at issue was whether the defendant's prior Maryland second degree assault conviction qualified as an ACCA "violent felony." Although second degree assault under Maryland law is defined as requiring either "offensive physical contact" or "physical harm," the Fourth Circuit found that these phrases were "alternative means of satisfying a single element" rather than alternative elements. *Royal*, 731 F.3d at 341. The Court relied on the Maryland second degree assault jury instruction to conclude as such. *Id.* The Court explained that "Maryland juries are not instructed that they must agree 'unanimously and beyond a reasonable doubt' on a whether the defendant caused either 'offensive physical contact' or 'physical harm' to the victim; rather, it is enough that each juror agree only that one of the two occurred, without settling on which." *Id.* Therefore, the Court found that Maryland

second degree assault is an indivisible offense with alternative means – not alternative elements that trigger the modified categorical approach.   *Id.*

Likewise, in *Omargharib*, the Fourth Circuit held that Virginia grand larceny is indivisible, even though Virginia law defines the offense as a "wrongful *or* fraudulent taking."   *Id.* at 198 (emphasis added).   The Court explained that "Virginia juries are not instructed to agree 'unanimously and beyond a reasonable doubt' on whether defendants charged with larceny took property 'wrongfully' or 'fraudulently.'   Rather as in *Royal*, it is enough for a larceny conviction that each juror agrees only that either a 'wrongful or fraudulent' taking occurred, without settling on which."   *Id.*   The Fourth Circuit heavily relied on the Virginia pattern jury instruction to conclude as such: "The model jury instruction does not tell the jury to distinguish between wrongful and fraudulent takings . . . . rather, it only requires a finding of a taking without the consent of the owner."   *Id.* (citing 2-36 Virginia Model Jury Instructions – Criminal G36.100(2014).   Hence, the Court concluded that "wrongful or fraudulent taking are alternative means of committing larceny, not alternative elements."   *Id.* at 200.   In turn, the Court concluded that Virginia larceny is indivisible as a matter of law, and the modified categorical approach had no role to play.   *Id.*

Applying the elements-driven categorical approach here, even if the overall offense targeted by the Hobbs Act is divisible between "extortion," and "robbery," *see* 18 U.S.C. § 1951(a), Hobbs Act robbery is not further divisible for the reasons noted below.

### C.    Hobbs Act robbery is an indivisible offense.

Hobbs Act robbery is defined as the following:

> The term "robbery" means the unlawful taking or unlawful taking or obtaining of personal property from the person in the presence of another, against his will, *by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property,* or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining shall [be punished in accordance with the remainder of the statute].

18 U.S.C. § 1951(b)(1) (emphasis added).

Although Hobbs Act robbery is defined with multiple phrases − "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property" − these disjunctive terms are merely means, not alternative elements which a unanimous jury must select. Jurors are never asked to specify which one of these phrases served as the basis for the conviction. Specifically, jurors are not asked to determine whether the defendant took the property in question 1) by means of actual or threatened force, or 2) by means of fear of injury.   Further, unanimity is not required on the question of whether fear or injury was future or immediate to person or property − indeed, these questions are never asked and never answered.   Rather, all of these terms go the jury in one clump, and "it is enough that each juror agree only that one of [these means] occurred, without settling on which."   *Royal*, 731 F.3d at 341.

Indeed, the Modern Federal Jury Instructions that this Court uses make this plain.   These instructions set forth the following elements for Hobbs Act robbery:

> First, that the defendant knowingly obtained or took the personal property of another, or from the presence of another;
>
> Second, that the defendant took this property against the victim's will, *by actual or threatened force, violence, or fear of injury, whether immediately or in the future*; and
>
> Third, that as a result of the defendant's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

Modern Federal Jury Instructions - Criminal 50-3 (emphasis added).

The second element is further detailed as follows:

> The second element the government must prove beyond a reasonable doubt is that a defendant unlawfully took this property against the victim's will, *by actual or threatened force, violence, or fear of injury, whether immediately or in the future*.   In considering whether the defendant *used, or threatened to use force, violence or fear*, you should give those words their common and ordinary meaning, and understand them as you normally would.   *The violence does not have to be directed at the person whose property was taken.   The use or threat of force or violence might be aimed at a third person, or at causing economic rather than physical injury*.   A threat may be made verbally or by a physical gesture.   Whether a statement or physical gesture by the defendant actually was a threat depends upon the surrounding facts.

Modern Federal Jury Instructions - Criminal 50-5 (emphasis added).

Critically, these instructions confirm that unanimity is not required regarding whether the defendant "robb[ed]" by means of actual or threatened force or violence or by means of fear of injury to person or property.   *Id.   See also* Pattern Crim. Jury Instr. 1st Cir. 4.16 (1998) (defining "by means of actual or threatened force, or violence, or fear of injury to his/her person or property" as a single unified element of Hobbs Act robbery); Pattern Crim. Jury. Instr. 11th Cir. OI 70.3 (2010) (same). The jury does not have to unanimously decide one of these phrases to the exclusion of another. Therefore, these different ways of committing Hobbs Act robbery are alternative means of a single element.

Individual cases, too, show that courts instruct juries in a way that does not require jurors to agree on whether a Hobbs Act robbery offense was committed by force or violence versus fear of injury to person or property.  For example, in one case, jurors were simply asked whether the defendant took "property against the victim's will, by actual or threatened force, violence, or fear or injury, whether immediately or in the future." *United States v. Henry*, Crim. No. 06-33, 2007 WL 2458555, at *8 (E.D. Pa. Aug. 24, 2007) (finding no error in this instruction); *see also United States v. Potter,* Civ. No. 08-4518, 2009 WL 320605, at *4 (E.D. Pa. Feb. 6, 2009) (affirming similar instruction).

Therefore, Hobbs Act robbery is not divisible.  To be sure, Hobbs Act robbery can be committed in different ways.   But jurors in Hobbs Act cases are not required to agree on the *means* by which a robbery was carried out.  Thus, Hobbs Act robbery does not contain alternative elements within the meaning of *Descamps*.  As a result, the categorical approach – not the modified categorical approach – applies in determining whether Hobbs Act robbery qualifies as a "crime of violence" under the § 924(c) force clause.

Under the categorical approach, this Court must then assess the "most innocent conduct" encompassed in the elements of Hobbs Act robbery.  If this conduct does not fall within the force

clause, then the offense categorically fails to qualify as a "crime of violence."   In other words, if the full range of conduct encompassed in the elements fails to match the force clause, the offense can never qualify as a "crime of violence."   As further detailed below, Hobbs Act robbery can never qualify as a "crime of violence" because the full range of conduct encompassed in the elements of the offense fails to match the force clause.   Indeed, there are three ways in which Hobbs Act robbery can be committed without satisfying the force clause.   For each of these independent reasons, Hobbs Act itself fails to qualify as a § 924(c) "crime of violence."

> **D.     Hobbs Act robbery does not require violent force – let alone any physical force – against property because it can be accomplished by threatening injury to another's _intangible property_.**

To start with, the most innocent way of satisfying the Hobbs Act robbery statute is by placing someone in fear of _injury_ to his _intangible property_.   18 U.S.C. § 1951(b)(1).   This reason alone automatically disqualifies Hobbs Act robbery from qualifying as a "crime of violence" under the § 924(c) "force" clause, which requires _violent (i.e., strong) physical force_ against person or property.

Indeed, "[t]he concept of 'property' under the Hobbs Act is an expansive one" that includes "_intangible assets_, such as rights to solicit customers and to conduct a lawful business."   _United States v. Arena_, 180 F.3d 380, 392 (2d. Cir. 1999) (citing 18 U.S.C. § 1951(a), _abrogated in part on other grounds by Scheidler v. Nat'l Org. for Women, Inc._, 537 U.S. 393, 401 n.8) (2003) (emphasis added); _see also United States v. Iozzi_, 420 F.2d 512, 514 (4th Cir. 1970) (sustaining conviction under Hobbs Act when boss threatened "to slow down or stop construction projects unless his demands were met."); _United States v. Local 560 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America_, 780 F.2d 267, 281 (3d Cir. 1986) (the Circuits "are unanimous in extending Hobbs Act to protect intangible, as well as tangible property"); Modern Federal Jury Instructions-Criminal 50-4 ("The term 'property' includes money and other tangible and intangible things of value which are capable of being transferred from one person to another"); Modern Federal Jury Instructions - Criminal 50-5 ("The use

of threat of force or violence might be aimed at . . . causing *economic* rather than physical injury") (emphasis added).

Thus, Hobbs Act robbery can be committed via threats to devalue some intangible economic interest like a stock holding or contract right.   It goes without saying that such threats are not threats of physical force – let alone violent physical force against a person or property as required under the § 924(c) force clause.   Even threat of injury to tangible property does not require the threat of violent force.   One can threaten to injure another's property by throwing paint on someone's house, pouring chocolate syrup on one's passport, or spray painting someone's car.   It is plain that such actions do not require violent (i.e. strong) physical force against property, as required under the § 924(c)(3)(A) force clause.

This conclusion is reinforced by the Government's recent concession that Maryland common law robbery is not "crime of violence" under the almost-identical ACCA/career offender force clause. *See* Brief of Appellee, *United States v. Louis Martin*, No. 14-4779, ECF No. 58 at 73 (4th Cir. Sept. 14, 2015) ("In light of [*Johnson*], and the government's analysis of Maryland's interpretation of its crime of common law robbery, the government agrees that the defendant's earlier conviction . . . does not qualify as a 'violent felony' for purposes of the Armed Career Criminal Act."); Supplemental Brief of Appellee, *United States v. Coulter*, Case No. 14-4271, ECF No. 86 at 9 (4th Cir. Sept. 28, 2015) (same in context of career offender force clause).   The Government has conceded as such because Maryland common law robbery can be accomplished by threatening injury to property – an act that does not fall within the force clause.   *See United States v. Baten*, DKC-04-0256, ECF No. 23 (D. Md. Nov. 16, 2015).

Because Hobbs Act robbery, like Maryland robbery, can be accomplished by putting another in fear of injury to his property, it follows that Hobbs Act robbery also fails to qualify as a "crime of violence" under the "force" clause.[5]   This should end the analysis on Hobbs Act robbery.   However, assuming *arguendo* that this reason alone does not disqualify Hobbs Act robbery as a "crime of violence," two other independent reasons exist as to why Hobbs Act robbery does not qualify as a "crime of violence."   The discussion of these reasons follows.

> **E.**   **The act of putting someone in fear of injury to his person under Hobbs Act robbery does not require the use, attempted use, or threatened use of "violent force."**

One can also accomplish Hobbs Act robbery by placing another in fear of injury to his person. 18 U.S.C. § 1951(b)(1).   This action, at most, constitutes a threat of *injury* to another, which squarely does not require the use or threatened use of "violent force" against another, i.e., "strong physical force" necessary to constitute a "crime of violence" under the "force" clause.   *Johnson*, 559 U.S. at 140. The Fourth Circuit's decision in *Torres-Miguel,* 701 F.3d 165, is directly on point.   In that case, the Fourth Circuit unequivocally held that the threat of *any physical injury,* even "serious bodily injury or death," does not necessarily require the use of physical force – let alone "violent force."   *See also In re Sealed Case*, 548 F.3d 1085, 1089 (D.C. Cir. 2008) (holding that "by defining 'force or violence' to include the minimal level of force necessary to obtain property 'by sudden or stealthy seizure or snatching,' the [D.C. Code robbery] statute covers offenses that fail to qualify as crimes of violence");

---

[5]      Although the § 924(c)(3) force clause includes threat of physical force against *property* whereas the ACCA/career offender force clause is limited to physical force against *persons*, this distinction is of no help to the Government here because *injury* to property that is encompassed under the Hobbs Act does not require any *physical force* against property.   As discussed above, Hobbs Act robbery encompasses threats to *injure intangible property* – which certainly does not require any physical force – let alone violent physical force against property.   Also, as discussed above, even injury to tangible property does not require violent physical force.

*United States v. Tristan Allen*, Cr. No. 15-79 (ESH) (D.D.C. Dec. 16, 2015) (Transcript attached as Ex. 1) (holding that Maryland robbery does not constitute a crime of violence).

In *Torres-Miguel,* at issue was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "*will result in death or great bodily injury to another.*"   701 F.3d at 168 (citing Cal. Penal Code § 422(a)) (emphasis added).   The specific question in the case was whether the statute had an element equating to a threat of "violent force" under the "force" clause of U.S.S.G. § 2L1.2 – a clause that is identical in all relevant respects to the § 924(c) "force" clause.   *Id.* Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus, could never qualify as a "crime of violence" under the "force" clause.   *Id.* at 168-69.   The Court blanketly held that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence."   *Id.* at 168.   The Court, in strong words, proclaimed that "*of course*, a crime may *result* in death or serious injury without involving *use* of physical force."   *Id.* (emphasis added).

The Court, relying on several appellate decisions from various Circuits, reasoned that there are many ways in which physical injury – even death – can result without use of "violent force."   *Id.* at 168-69.   "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force."   *Torres-Miguel*, 701 F.3d at 168-69 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

In reaching its decision, the *Torres-Miguel* Court also relied on the Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003).   In that case, at issue was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause.   The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury."   *Chrzanoski*, 327 F.3d at 193.   Nonetheless, the "Second Circuit [] held that

[the statute] does not constitute a crime of violence . . . because there is a difference between causation of an injury, which is all that the Connecticut statute [] required, and an injury's causation by the use of physical force." *Torres-Miguel*, 701 F.3d at 169 (citing *Chrzanoski*, 327 F.3d at 194) (internal quotation marks omitted).

The Second Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." *Chrzanoski,* 327 F.3d at 195.  The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink.  *Id.* at 195-56.

For even further support, in *Torres-Miguel*, 701 F.3d at 169, the Fourth Court embraced the Tenth Circuit's decision in *United States v. Perez-Vargas*, 414 F.3d 1282, 1287 (10th Cir. 2005).   In that case, the Tenth Circuit "explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury [by means of a dangerous weapon], imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. § 2L1.2." *Torres-Miguel*, 701 F.3d at 169 (citing *Perez-Vargas*, 414 F.3d at 1287) (internal quotation marks omitted).  The Tenth Circuit reasoned that "several examples [exist] of third degree assault that would not use or threaten the use of physical force: . . . intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Perez-Vargas*, 414 F.3d at 1286.

Therefore, *Torres-Miguel* and all the other cases discussed above command that Hobbs Act robbery, which can be accomplished by putting another in fear of physical injury, does not require "violent force."   If threat of serious bodily injury or death do not equal violent force, then certainly, threat of "physical injury" does not.  Indeed, a defendant can place another in fear of injury by

threatening to *poison* that person, to expose that person to hazardous chemicals, to withhold one's insulin, to place a barrier in front of the person's car, to lock the person up in the car on a hot day, to lock that person at an abandoned site without food or shelter – some of the very examples that the Fourth Circuit in *Torres-Miguel,* as well as the other Courts mentioned above, held do not constitute "violent force."

> 1.   **The Supreme Court's ruling in *United States v. Castleman* did nothing to undo *Torres-Miguel.***

Nonetheless, the Government is sure to argue that the Supreme Court's holding in *United States v. Castleman,* 134 S. Ct. 1405 (2014) has overruled *Torres-Miguel.*   ECF No. 46 at 16-18.   *Castleman* did no such thing.   It did not disturb *Torres-Miguel*'s logic or holding.   In *Castleman,* the Supreme Court held that a prior Tennessee domestic violence offense that had an element of physical injury qualified as a misdemeanor crime of domestic violence under the "force" clause of 18 U.S.C. § 922(g)(9).   *Id.* at 1413-15.   However, the "force" clause of § 922(g)(9) is critically different from that applicable here and in *Torres-Miguel.*   In fact, in *Castleman,* the Supreme Court, in great length, explained that it was applying a definition of "physical force" to § 922(g)(9) that was starkly different from that of the ACCA/§ 924(c)(3) force clause, which requires violent physical force.   134 S. Ct. at 1410-15.   Unlike the definition of "physical force" at issue here (and in *Torres-Miguel* and the first *Johnson*), the *Castleman* Court applied the common law definition of "physical force" that encompassed "even the slightest offense touching" – i.e., de minimis force.   *Id.* at 1410.   In this context, the Court held that physical injury necessarily requires de minimis force.   *Id.* at 1413-15.

But more importantly, the Supreme Court in *Castleman* explicitly refused to evaluate the validity of the logic rejecting *Torres-Miguel.*   The *Castleman* Court wrote that "*[w]hether or not the causation of bodily injury necessarily entails violent force [is] a question we do not reach.*"   *Id.* at 1413 (emphasis added).   That, of course, is the question any decision abrogating *Torres-Miguel* must answer.   Because *Castleman*

failed to reach the question *Torres-Miguel* answered, *Torres-Miguel* retains its vitality and remains binding precedent that this Court has no choice but to follow.   In any event, even if *Castleman* calls *Torres-Miguel* into question, Hobbs Act robbery still fails to qualify as a "crime of violence" under the § 924(c) force clause because it can be violated by threatening injury to *intangible property,* which does not require any physical force whatsoever.

**2.**     **Congressional intent does not undo *Torres-Miguel*.**

Despite *Torres-Miguel*, the Government has been arguing that Hobbs Act robbery must be a "crime of violence" because Congress could not have rationally intended to exclude it.   The Government says its implausible and unpersuasive to argue that Congress intended to exclude Hobbs Act robbery, despite *Torres-Miguel*.   This Court, however, need not find that Congress intended robbery to fall outside the overall crime of violence definition.   In fact, the Court can assume that Congress affirmatively intended Hobbs Act robbery to qualify as a "crime of violence" under the § 924(c) residual clause.   But it is only because the residual clause is now unconstitutional that Hobbs Act robbery can no longer qualify as a § 924(c) "crime of violence."   This was not Congress' doing. It was the Supreme Court's doing.   However, it is important to note that Congress now has the opportunity to amend § 924(c) to again include Hobbs Act robbery, and it may well do so in the near future.   But this Court cannot do Congress' work by re-writing § 924(c) to include Hobbs Act robbery.

**F.**     **The act of putting another in fear of injury does not require an *intentional* threat of violent force necessary under § 924(c)'s force clause.**

Independent of the above-discussed reasons, the act of putting someone in fear of injury, as defined under the Hobbs Act robbery statute, does not constitute a "crime of violence" under the force clause because it does not require an *intentional* threat of physical force.   In *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006), the Fourth Circuit firmly held that an offense can only constitute a

17

"crime of violence" under the force clause if it has an element that requires an "*intentional* employment of physical force [or threat of physical force]." *Id.* (emphasis added); *see also Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 447 (4th Cir. 2005) (same); *United States v. Dixon*, __F.3d__, 2015 WL 7422615 (9th Cir. 2015) (finding that California robbery is not a "crime of violence" under the "force" clause because it does not require the intentional use or threat of force).   All other Circuits have held the same, many of them relying on the Fourth Circuit's holding in *Garcia* and *Bejarano-Urrutia*.[6]   *See also United States v. King,* 979 F.2d 801, 803 (10th Cir. 1992) (holding that "threatened use of force" in the ACCA force clause "means both *an intent* to use force and a communication of that threat") (citing Black's Law Dictionary 1480 (6th ed. 1990)) (emphasis added).   The "fear of injury" element under the Hobbs Act robbery statute does not require a defendant to intentionally place another in fear of injury.   Therefore, it is missing the intentional mens rea necessary under *Garcia*.

Federal cases interpreting the "intimidation" element in the federal bank robbery statute (18 U.S.C. § 2113(a)) are instructive here.   Federal bank robbery may be accomplished by "intimidation," which means placing someone in fear of bodily harm – the same action required under the Hobbs Act robbery statute.   *See United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) ("intimidation" under federal bank robbery statute means "an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts"); *see also United States v. Pickar*, 616 F.2d 821, 825 (2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (2005) (same); *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003) (same); *United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same).

---

[6]       *See United States v. Palomino Garcia*, 606 F.3d 1317, 1335-36 (11th Cir. 2010) (citing *Garcia* and *Bejarano-Urrutia*); *Jimenez-Gonzalez v. Mukasey*, 548 F.3d 557, 560 (7th Cir. 2008); *United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008) (citing *Bejarano-Urrutia*); *United States v. Torres-Villalobos*, 487 F.3d 607, 615-16 (8th Cir. 2007) (citing *Bejarano-Urrutia*); *United States v. Portela*, 469 F.3d 496, 499 (citing *Garcia* and *Bejarano-Urrutia*); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1127-32 (9th Cir. 2006) (en banc) (citing *Bejarano-Urrutia*); *Oyebanji v. Gonzales*, 418 F.3d 260, 263-65 (3d Cir. 2005) (citing *Bejarano-Urrutia*); *Jobson v. Ashcroft,* 326 F.3d 367, 373 (2d Cir. 2003); *United States v. Chapa-Garza*, 243 F.3d 921, 926 (5th Cir. 2001).

It is plain that the "intimidation" element of federal bank robbery is missing this necessary intentional mens rea required under *Garcia*.   "Intimidation" is satisfied under the bank robbery statute "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *Woodrup*, 86 F.3d at 36.   *See also United States v. Yockel*, 320 F.3d 818, 821 (8th Cir. 2003) (upholding bank robbery conviction even though there was no evidence that defendant intended to put teller in fear of injury: defendant did not make any sort of physical movement toward the teller and never presented her with a note demanding money, never displayed a weapon of any sort, never claimed to have a weapon, and by all accounts, did not appear to possess a weapon); *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating."); *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) (same).

In other words, a defendant may be found guilty of federal bank robbery even though he did not intend to put another in fear of injury.   It is enough that the victim reasonably fears injury from the defendant's actions – whether or not the defendant actually intended to create that fear.   Due to the lack of this intent, federal bank robbery criminalizes conduct that does not require an intentional threat of physical force.   Therefore, bank robbery squarely fails to qualify as a "crime of violence" under *Garcia*.   Because the federal bank robbery "intimidation" element is defined the same as the Hobbs Act robbery "fear of injury" element, it follows that Hobbs Act robbery also fails to qualify as a "crime of violence" under *Garcia*.

G.    **Because the "full range of conduct" covered by the Hobbs Act robbery statute does not require "violent force," it cannot qualify as a "crime of violence" under § 943(c)(3)'s force clause.**

Because "the full range of conduct" covered by the Hobbs Act robbery statute does not require "violent force" for all the reasons discussed above, it cannot qualify as a "crime of violence"

under § 924(c)(3)'s force clause.   *Torres-Miguel*, 701 F.3d at 171.   And it makes no difference that the possibility of violating the Hobbs Act robbery statute without violent force and without an intentional mens rea is small.

The Court in *Torres-Miguel* could not have made this more clear.   The Government in that case argued that there was no "realistic probability" that the defendant could have violated the California terroristic threats statute in question without threatening violent physical force.   *Id.* at 170-71.   The Fourth Circuit, however, held that the "realistic probability" test did not apply to the force clause; therefore, the defendant had no burden to show a "realistic probability" that the terroristic threats statute could be violated without a threat of violent physical force.   *Id.*   Because a possibility − no matter how slim − existed that one could be prosecuted under the statute without a threat of violent force, the Fourth Circuit found that the prior offense categorically failed to qualify as a "crime of violence."   *Id.*   This Court should find the same with respect to the Hobbs Act robbery statute, which leaves open an even greater possibility that the offense can be violated absent violent force against a person or property and absent an intentional mens rea for all the above-discussed reasons.

**H.**      **The district court decisions which have ruled that Hobbs Act robbery qualifies as a "crime of violence" are deeply flawed and wholly unpersuasive.**

A handful of district judges have recently ruled, mostly in unpublished decisions, that Hobbs Act robbery is a "crime of violence" under the "force" clause of 18 U.S.C. § 924(c)(3)(A).   *See United States v. McDaniels*, 2015 WL 745539 (E.D. Va. 2015); *United States v. Anglin*, 2015 WL 6828070 (E.D.Wis. Nov. 6, 2015); *United States v. Merinord*, 2015 WL 6457166 (E.D.N.C. Oct. 26, 2015); *United States v. Hunter*, 2015 WL 6443084 (E.D.Va. Oct. 23, 2015); *United States v. Brownlow*, 2015 WL 6452620 (N.D. Ala. Oct. 26, 2015*); United States v. Evans*, 2015 WL 6673182 (E.D. N.C. Oct. 20, 2015); *United States v. Redmond*, 2015 WL 5999317 (W.D.N.C. Oct. 13, 2015); *United States v. Standberry*, __ F. Supp.3d __, 2015 WL 5920008 (E.D.Va. Oct. 9, 2015); *United States v. Mackie*, 2015 WL 5732554 (W.D.N.C.

Sept. 30, 2015).   These decisions, however, are all deeply flawed and highly unpersuasive for the reasons discussed below.

*First*, not one of these decisions addresses the argument that Hobbs Act robbery fails to qualify as a "crime of violence" because it encompasses a fear of injury to *intangible property*.   This reason alone disqualifies Hobbs Act robbery as a "crime of violence," yet these district court decisions are silent on this most crucial point.   Not one of these decisions explains how Hobbs Act robbery can constitute a "crime of violence" under the "force" clause, when such offense is so broad that it contemplates taking one's property by threatening to devalue another's stocks – conduct that falls far short of physical force, let alone violent physical force.

*Second*, some district courts, in direct conflict with *Descamps, Omargharib,* and *Royal*, have sloppily relied on the modified categorical approach to summarily conclude that the Hobbs Act robbery offense at issue was a "crime of violence."   *See Anglin*, 2015 WL 6828070, at *7; *Brownlow*, 2015 WL 645260, at *4; *Redmond,* 2015 WL 5999317, at 3; *United States v. Standberry*, 2015 WL 5920008, at *6; *Mackie,* 2015 WL 5732554.   For the reasons already set forth above, the application of the modified categorical approach here is dead wrong.[7]

*Third*, some district courts have effectively acknowledged that under the Fourth Circuit's ruling in *Torres-Miguel*, Hobbs Act robbery is not a "crime of violence" because it can be committed by a threat of *physical injury* against another rather than a threat of *violent physical force*.   Nonetheless, these courts have concluded that the Supreme Court's holding in *United States v. Castleman,* 134 S. Ct. 1405 (2014) has overruled *Torres-Miguel*.   *See McDaniels,* 2015 WL 7455539, at *5; *Merinord,* 2015 WL

---

[7]      In *McDaniels*, 2015 WL 7455539, at *4, the Court altogether refused to apply the categorical approach even though the Fourth Circuit squarely held in *Fuertes,* 805 F.3d at 498 that the categorical approach applies in determining whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c).   The district court's defiance of *Fuertes* is incomprehensible.

6457166, at *4; *Evans*, 2015 WL 6673182, at *5; *Standberry*, 2015 WL 5920008 at *4.   As already explained above*, Castleman* did nothing at all to upset *Torres-Miguel.*

Finally, some district courts have rejected the claim that Hobbs Act robbery fails to qualify as a "crime of violence" because it does not require *intentionally* putting someone in fear of injury.   *See Standberry*, 2015 WL 5920008, at *4; *Merinord*, 2015 WL 6457166, at *4.   These courts have explained that it is "somewhat implausible" that Hobbs Act robbery can be committed absent an intentional mens rea.   *Standberry*, 2015 WL 5920008, at *4.   However, in so concluding, these courts have ignored the Fourth Court's decision in *Woodrup*, 86 F.3d at 364, which squarely held that a defendant can put another in fear of injury without any intent to do so.   District courts have no authority to ignore such precedent.

The Fourth Circuit's en banc decision in *United States v. Aparicio-Soria*, 740 F.3d 152, 157-58 (4th Cir. 2014) (en banc) is instructive.   In that case, at issue was whether Maryland resisting arrest has an element of violent physical force necessary to qualify as "crime of violence" under the "force" clause.   Even though the Maryland Court of Appeals had explicitly held that resisting arrest does not require violent physical force, the Government still argued that "there is no way to be convicted of resisting arrest in Maryland without the use of violent force."   *Id.* at 157.   In support, the Government cited 38 published decisions by the Maryland appellate courts which involved the use of violent force.   *Id.*   Based on the facts in these cases, the Government argued that there was no realistic probability that resisting arrest could be committed without violent force.   *Id.*   But the Fourth Circuit responded: "We do not need to hypothesize about whether there is a 'realistic probability' that Maryland prosecutors will charge defendants engaged in non-violent physical contact with resisting arrest; we know that they can because the state's highest court has said so. . . . violent force is simply not an element of resisting arrest in Maryland.   And that ends the inquiry."   *Id.* at 158.

Likewise, the intentional use or threat of force is not an element of Hobbs Act robbery.   The Fourth

Circuit said so in *Woodrup*, 86 F.3d at 364, and that ends the inquiry

## II.   Section 924(c)(3)'s Residual Clause Is Unconstitutionally Vague.

Since Hobbs Act robbery fails to qualify as a "crime of violence" under § 924(c)(3)'s force

clause, the remaining question is whether the offense can qualify as a "crime of violence" under §

924(c)(3)'s residual clause.   It cannot under *Johnson*.   In *Johnson*, the Supreme Court decided that the

ACCA's residual clause ("otherwise involves conduct that presents a serious potential risk of physical

injury to another") is unconstitutionally vague, but the decision equally applies to the parallel "crime of

violence" definition in § 924(c)(3)'s residual clause.   Section 924(c)(3)(B) suffers from the same two

flaws that compelled the Supreme Court to declare the ACCA residual clause void for vagueness.

Using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence," therefore, violates

due process.

Indeed, the 9th Circuit in *Dimaya*, 803 F.3d 1110, and the 7th Circuit in *Vivas-Ceja*, 2015 WL

9301373, recently ruled that 18 U.S.C. § 16(b) – which is identical to § 924(c)(3)(b) – is void for

vagueness.   Consistent with these decisions, Judge Grimm in *Edmundson*, 2015 WL 9582736,

concluded the same with respect to the § 924(c) residual clause itself.   This Court should follow these

well-reasoned decisions and the hold the same here.

### A.   *Johnson* expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."

In *Johnson*, the Supreme Court "began its analysis of the vagueness question by noting that the

[ACCA] residual clause mandates the use of a two-step framework [under the categorical approach], to

determine whether a crime is a violent felony."   *Vivas-Ceja*, __ F.3d __, 2015 WL 9301373, at *2

(citing *Johnson*, 135 S. Ct. at 2557, 2562).   "In the first step, the court must determine 'the kind of

conduct that the crime involves in the ordinary case' as opposed to the facts on the ground in the

defendant's prior case." *Id.* (quoting *Johnson*, 135 S. Ct. at 2557).   The second step is also dependent on the ordinary case.   Specifically, the "court must gauge whether that ordinary case of the crime presents a serious potential risk of physical injury."   *Vivas-Ceja*, 2015 WL 9301373, at *2 (quoting *Johnson,* 135 S. Ct. at 2557).

The Supreme Court held that these "two features of the residual clause conspire to make it unconstitutionally vague."   *Johnson*, 135 S. Ct. at 2557.   To begin with, the Court held that it is impossible for a sentencing court to even get past the first step because there is too much uncertainty about what constitutes the ordinary case of a crime.   *Id.*   The Court concluded that the "the residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' . . . involves." *Id.* at 2558.   Specifically, the Court explained that a statistical analysis of reported cases, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case."   *Id.* at 2557 (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc))).

The Court then held that the second step of the residual clause is equally flawed because there is too much "'uncertainty about how much risk it takes' [i.e., the quantum of risk] before a court can conclude that the 'ordinary case' of a crime is serious enough to be a violent felony."   *Vivas-Ceja*, 2015 WL 9301373, at *3 (citing *Johnson,* 135 S. Ct. at 2558).   To be clear, the Court's reasoning on the second step did not turn on the type of risk, i.e. "serious potential risk of physical injury."   Rather, like the first step, it also turned on the doomed "ordinary case" inquiry:   "It is one thing to apply an imprecise 'serious potential risk' standard to real-word facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction."   *Johnson*, 135 S. Ct. at 2558.   With these words, the Court conveyed that the constitutionality of the ACCA residual clause would not have been in question if the statute had required the jury to determine the risk based on the individual facts in the case.   *Id.*   The Court explained that it was not doubting the constitutionality of any statute which "require[s] gauging

24

the riskiness of conduct in which an individual defendant engages *on a particular occasion*." *Johnson* at 2561 (emphasis added).   However, because under the ACCA residual clause, the quantum of risk had to be assessed based on the ordinary case, the clause was constitutionally doomed.   The Court held that such indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary" case analysis is more than the "Due Process Clause tolerates."   *Id.* at 2558.

Thus, *Johnson* not only invalidated the ACCA residual clause, but it invalidated the "ordinary case" analysis and statutory provisions that compel such an analytical framework.   In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

## B.  *Johnson* Means That § 924(c)(3)(B) Is Unconstitutionally Vague.

The statutory phrase at issue in this case is essentially the same as the ACCA residual clause.[8] To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical.[9]   But the differences have no impact on the constitutional analysis.   Although the risk at issue in the ACCA

---

[8]      Courts regularly compare the similarities between the residual clause in the ACCA to the clause at issue here.   Although the comparison tends to specifically address 18 U.S.C. § 16(b), that statute is identical to § 924(c)(3)(B).   *See, e.g., Chambers v. United States*, 555 U.S. at 133, n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring). *See also United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (same);*United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA otherwise clause and § 16(b) as "analogous"); *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

[9]      In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another."   18 U.S.C. § 924(e)(2)(B)(ii).   Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

is a risk of injury, and the risk at issue in § 924(c) is a risk that force will be used, this difference is immaterial to the due process problem and has no impact on the *Johnson* decision.[10]   The Court's holding did not turn on the type of risk, but rather how a court assesses and quantifies the risk.[11]

The two-step process is the same under both the ACCA and § 924(c). Both statutes require courts first to picture the "ordinary case" embodied by a felony,[12] and then decide if it qualifies as a crime of violence by assessing the quantum of risk posed by the "ordinary case."   The Fourth Circuit held exactly as such in *United States v. Avila*, 770 F.3d 1100, 1107 (4th Cir. 2014) in construing § 16(b):

---

[10]   *See Vivas-Ceja*, 2015 WL 9301373, at *3 ("§ 16(b) substitutes 'substantial risk' for the residual clause's 'serious potential risk.'   Any difference between the two phrases is superficial.   Just like the residual clause, § 16(b) offers courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial.'"); *Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other).   *See also United States v. Gomez-Leon,* 545 F.3d 777 (9th Cir. 2008); *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F.3d 390, 394 (5th Cir. 1997); *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and holding that U.S.S.G. § 4b1.2, which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

[11]   Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable."   And the Supreme Court in *Johnson* said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct."   By contrast, the ACCA's residual clause, and § 924(c)(3) too, require it to be applied to "an idealized ordinary case of the crime," an "abstract inquiry" that "offers significantly less predictability."   *Johnson*, 135 S. Ct. at 2558.

[12]   Both the ACCA and § 924(c)(3)(B) require courts to discern what the ordinary case of a crime is by using the categorical approach.   *See, e.g., Fuertes,*   805 F.3d at 498; *United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d 1104, 1108 (10th Cir. 2009); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *United States v. Acosta*, 470 F.3d 132, 134 (2d Cir. 2006); *United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue.

> [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James*, 550 U.S. at 208, 127 S. Ct. 1586. As long as an offense is of a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*Id.*

*Avila* controls here because § 16(b) and § 924(c)(3)(B) are identical.[13]   Even more, consistent with *Avila*, in *Fuerte*s, the Fourth Circuit directly applied the "ordinary case" inquiry to the § 924(c) residual clause.   805 F.3d at 500 n.6.   *See also United States v. Naughton*, 621 Fed. Appx. 170, 178 (4th Cir. Sept. 2, 2015) (applying the ordinary case inquiry to § 924(c)(3)(B)).   Thus, as Judge Grimm explained in *Edmundson*, the "§ 924(c) residual clause suffers from exactly the same double indeterminancy as the ACCA residual clause."   *Edmundson*, 2015 WL 9582736, at *4.   Moreover, the Ninth and Seventh Circuits recognized the same in invalidating § 16(b), the identical twin to § 924(c)(3)(B), as void for vagueness under *Johnson*.   *See Vivas-Ceja,* 2015 WL 9301373, at *3; *Dimaya*, 803 F.3d at 1117.

It is also noteworthy that in litigating *Johnson*, the Government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and here pose the same problem.   Upon recognizing that the definitions of a crime of violence in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central

---

[13]      Other courts likewise require the ordinary case analysis when the statutory language of § 16(b) (and thus § 924(c)(3)(B)) is at issue.   *See, e.g., Keelan*, 786 F.3d at 871 ( adopting "ordinary case" analysis for § 16(b)); *United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2012) (citing *James* as the source of the "ordinary case" analysis required by § 16(b)); *Van Don Nguyen v. Holder*, 571 F.3d 524, 530 (6th Cir. 2009) (considering § 16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute."); *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1213 (10th Cir. 2007) (same).

> objection to the residual clause: Like the ACCA, Section 16 requires a
> court to identify the ordinary case of the commission of the offense
> and to make a commonsense judgment about the risk of
> confrontations and other violent encounters.

*Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23

(available at 2015 WL 1284964 at *22-*23).   The Solicitor General was right.   Section 924(c)(3)(B)

and the ACCA are essentially the same and contain the same flaws.   This Court should hold the

Government to that concession.

Section 924(c)(3)(B), like the ACCA residual clause, thus requires the "ordinary case"

analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is.

*Fuertes*, 805 F.3d at 500 n.6; *Avila*, 770 F.3d at 1107; *Ayala*, 601 F.3d at 267; *Van Don Nguyen*, 571

F.3d at 530; *Sanchez-Garcia*, 501 F.3d at 1213.   Since these are the identical analytical steps that

brought down the ACCA residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under

the due process principles reaffirmed in *Johnson*.   As a consequence, the residual clause cannot be

used to support a conviction under § 924(c).

**C.    The list of enumerated offenses preceding the ACCA's residual clause was not material to the Supreme Court's decision in *Johnson*.**

In direct conflict with *Dimaya*, *Vivas-Ceja*, and *Edmundson*, this Court, in *United States v. Hayes*,

RDB-14-0577 (D. Md. Dec. 21, 2015), held that the § 924(c) residual clause is not void for vagueness.

In concluding as such, the Court relied on the fact that the ACCA has enumerated offenses (burglary,

arson, extortion, involves use of explosives) that precede the residual clause – enumerated offenses

that do not appear in § 924(c).   *Id.* at 6.   The Court noted that confusion over how to use these

enumerated offenses "motivated the [Supreme] Court's decision to strike down the residual clause."

*Id.*   This is incorrect.

Although the Supreme Court noted that the enumerated offenses which precede the ACCA

residual clause are an *added* problem, the Supreme Court's decision in *Johnson* did not hinge on the list

of enumerated offenses that precede the ACCA's residual clause.  *Johnson*, 135 S. Ct. at 2558.   The Supreme Court said the residual clause was void for vagueness based on the "two features" turning on the ordinary case – not a third feature turning on the enumerated offenses.  *Id.* at 2557; see also *Vivas-Ceja*, 2015 WL 9301373, at *4 ("The list [of enumerated offenses] itself wasn't't one of the 'two features' that combined to make the clause unconstitutionally vague.") (citing *Johnson*, 135 S. Ct. at 2557).

Additionally, as a matter of pure logic, *Johnson* could not have turned on the enumerated offenses.  The ordinary case problem exists with or without enumerated offenses because a lower court must determine the idealized ordinary case of the predicate offense before it can even begin to evaluate the type of risk presented by that offense.  *Id.* at 2557-58.   Because courts cannot answer the *threshold question* with any certainty, logic compels that the ordinary case analysis itself renders the residual clause unconstitutionally void.   If a court cannot determine the ordinary case of the predicate offense, then a court cannot proceed with its risk analysis – enumerated offenses or not.

It is true, that in parrying Justice Alito's criticism that its decision would invalidate a multitude of similar laws, the *Johnson* Court initially noted that none of those statutes included the ACCA's enumerated list.  But the Court then made clear that the "ordinary case" problem was really the central distinguishing feature: "*More importantly*, almost all of the cited laws require gauging the riskiness of conduct in which an individual engages on a particular occasion . . . . The residual clause, however, requires application of the 'serious potential risk' standard to an idealized ordinary case of the crime." *Johnson*, 135 S. Ct. at 2561 (emphasis added).

For this very reason, *Dimaya*, 803 F.3d at 1117-18, *Vivas-Ceja*, 2015 WL 9301373, at *4, and *Edmundson,* 2015 WL 9582736, at *5, all flatly rejected the Government's argument that *Johnson* turned on the enumerated offenses, and this Court should do the same.

**D.    The same level of confusion surrounds § 924(c)(3)(B) as surrounded the ACCA's residual clause.**

In *Hayes*, this Court further noted that § 924(c)(3)(B), is not unconstitutionally void because unlike the ACCA, it is not shrouded in confusion.   *Hayes* at 7.   It is true that several memorable Supreme Court dissents before *Johnson* criticized the ACCA's residual clause without naming § 924(c)(3)(B) specifically.   But that is neither here nor there.

The Court's decision in *Hayes* glosses over the fact that cases addressing § 924(c)(3)(B) and § 16(b) regularly rely on ACCA cases, and *vice-versa*.   (*See supra* notes 7 and 9).   Confusion over the meaning of § 924(c)'s residual clause is subsumed in the confusion surrounding the ACCA.   Courts use the same body of precedent to interpret all three.   *See supra* n.7.   Thus, confusion surrounding the ACCA reflects difficulties with § 924(c)(3)(B) and § 16(b), even without the same explicit chorus of criticism.   And some circuits have split over how to apply § 16(b).   *See e.g., Chambers*, 555 U.S. at 133 (Alito and Thomas, JJ., concurring) (citing some illustrative cases).   There is no reasonable way to separate the level of confusion over the scope of these three residual clauses.

In any event, as the Seventh Circuit explained in *Vivas-Ceja*, "[t]hat the [ACCA] residual clause had persistently eluded stable construction, was additional evidence that served to 'confirm its hopeless indeterminancy.' *Johnson*, 135 S. Ct. at 2558.   The chaotic state of the caselaw was not a necessary condition to the Court's vagueness determination."   2015 WL 9301373, at *4 (citation and internal quotation marks omitted).   And it is not a necessary condition to strike down the § 924(c) residual clause.

## **CONCLUSION**

Hobbs Act robbery fails to categorically qualify as a "crime of violence" under § 924(c)'s force clause, and § 924(c)'s residual clause is unconstitutionally vague under *Johnson*.   Thus, no legal basis exists for a § 924(c) conviction.   As a result, this Court should dismiss Count Two of Mr. McCallister's indictment.


Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/S_____
JONATHAN S. JEFFRESS
ASSISTANT FEDERAL PUBLIC DEFENDER
625 Indiana Ave., NW    Ste. 550
Washington, DC    20004
(202) 208-7500
Jonathan_jeffress@fd.org